UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH SCHULTZ,<br><br>           Plaintiff,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>           Defendants. | Case No. 1:11-cv-00988-LJO-MJS<br><br>FINDINGS AND RECOMMENDATIONS TO:<br><br>1) DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 51.)<br><br>2) DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 71.)<br><br>3) GRANT PLAINTIFF'S MOTION FOR CORRECTION (ECF No. 77.)<br><br>FOURTEEN (14) DAY OBJECTION DEADLINE |

**I.     PROCEDURAL HISTORY**

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 & 6.) The action proceeds against Defendant Kim on Plaintiff's Eighth Amendment inadequate medical care claim. (ECF Nos. 9 & 22.)

Before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 51 & 71.) The parties filed oppositions (ECF Nos. 70 & 75.) and replies (ECF Nos. 74 & 76.). Plaintiff also filed a motion to correct a typographical error in his opposition to

Defendant's motion for summary judgment. (ECF No. 77.) These matters are deemed submitted. Local Rule 230 (*l*).

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed R. Civ. P. 56(c)(1).

"Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the burden of proof at trial rests with the nonmoving party, then the moving party need only point to "an absence of evidence to support the nonmoving party's case." *Id*. Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." *Id.* (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).

In evaluating the evidence, "the [C]ourt does not make credibility determinations or weigh conflicting evidence," and "it draws all inferences in the light most favorable to the nonmoving party." *Id.*

### B.  Factual Background

On February 9, 2009, Plaintiff sought medical care for a skin lesion, flu-like symptoms, and sore muscles. On February 11, 2009, Dr. Yu saw Plaintiff and ordered

2

blood tests and noted the skin lesion plus issues with constipation. On February 18, 2009, a metabolic panel flagged four items as high, prompting retesting. February 20, 2009 retest results were relatively normal.

Plaintiff's muscle and joint pain increased, and so on May 15, 2009, Dr. Yu ordered a comprehensive metabolic panel.

On June 9, 2009 and July 14, 2009, Plaintiff complained to nurse D. McGrew of increased pain, loss of sleep, and difficulty walking. McGrew informed Plaintiff that his tests appeared normal, but that he would see a doctor the following week.

On July 22, 2009, Plaintiff saw Defendant Kim for pain. He inquired about his blood test results and asked if he had chronic sepsis. Defendant Kim informed Plaintiff he did not have sepsis and that he may "have to learn to live with the pain." (ECF Nos. 70-1 at 3; 71-1 at 6; 51 at 4.)

According to the medical records, Defendant Kim noted at the time that Plaintiff's skin lesion was either basal cell carcinoma or actinic keratosis, and he referred Plaintiff to Dr. Sanchez for excision. Dr. Kim also noted that Plaintiff's pain could come from chronic fatigue syndrome or depression. The parties dispute whether Dr. Kim treated Plaintiff disrespectfully, raised his voice at him, or snapped at him during the visit.

On July 29, 2009, Plaintiff submitted an inmate appeal regarding Dr. Kim's care.

On August 2, 2009, Plaintiff submitted a health care request form due to his increasing pain. On August 4, 2009, Plaintiff saw nurse McGrew regarding this request.

On August 18, 2009, Plaintiff saw nurse Brabant for his pain. Nurse Brabant scheduled Plaintiff for lab tests and x-rays. The lab tests were nonspecific and the x-rays showed Plaintiff had "Minimal arthritic changes" in his hips, "Bilateral osteoarthritis," and "Possible bilateral tendinitis" in his shoulders. (ECF No. 51 at 31-32.)

On September 22, 2009, Defendant Kim followed-up on Plaintiff's biopsy and excision of his chest lesion. Defendant removed the sutures and discharged Plaintiff

from the chronic care program with follow-up in two months.  Defendant did not address Plaintiff's pain.

On November 23, 2009, Defendant saw Plaintiff for his final follow-up and interviewed him regarding his inmate appeal against Defendant.  Defendant advised Plaintiff to not self-diagnose or request unnecessary testing.  He also noted that in the absence of evidence of sepsis, Plaintiff may have hypochondriasis or antisocial personality disorder.  The parties dispute whether this interaction was hostile.  Plaintiff alleges Defendant was angry and responded with rage.

In early 2010, Plaintiff saw Dr. Karan.  Dr. Karan scheduled Plaintiff for additional x-rays and blood and urine tests.  Dr. Karan came to a probable diagnosis of polymyalgia rheumatic ("PMR") and treated Plaintiff with prednisone.  The prednisone produced dramatic relief, and Dr. Karan confirmed that Plaintiff had PMR.  By December 2010, Plaintiff was off the prednisone and by March 2011, he could jog four miles a day, four or five times per week.

Dr. Kim avers that when he saw Plaintiff in 2009 he was unfamiliar with PMR.  PMR is a rare disease, and it did not occur to Defendant that Plaintiff could have PMR.

Defendant submitted a declaration from Dr. Barnett who opines "that the care Dr. Kim provided was within the community standard, and certainly did not amount to deliberate indifference."  (ECF No. 71-3 at 7.)  According to Dr. Barnett, Plaintiff's presentation was atypical for PMR.

### C.     Inadequate Medical Care

A claim of medical indifference requires: 1) a serious medical need, and 2) a deliberately indifferent response by defendant.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  A serious medical need may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *Id.*; *See also McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would

4

find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

The deliberate indifference standard is met by showing: a) "a purposeful act or failure to respond to a prisoner's pain or possible medical need", and b) "harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (brackets omitted) (*quoting Gibson v, Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n inadvertent failure to provide adequate medical care" does not, by itself, state a deliberate indifference claim for § 1983 purposes. *McGuckin*, 974 F.2d at 1060 (internal quotation marks omitted); *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

### 1.   Parties' Arguments

Defendant Kim argues that: 1) he properly treated Plaintiff for conditions he knew required treatment, 2) PMR is a rare disease that Defendant was unfamiliar with and did not suspect in Plaintiff, 3) Plaintiff's PMR was correctly diagnosed and treated, and 4)

Plaintiff did not suffer any significant harm from the delay in treatment. Defendant failed to diagnose Plaintiff with PMR because of unfamiliarity with the disease not disregard for Plaintiff's medical needs. None of the other medical personnel who saw Plaintiff during the same time period diagnosed PMR.

Plaintiff contends that at his July 22, 2009 appointment, Defendant dismissed him without examining him, scheduling tests, or attempting to determine the cause of his pain. Instead, Defendant informed Plaintiff that he was "going to have to learn to live with the pain," and that he did not have sepsis. Even if Defendant preliminarily diagnosed Plaintiff with chronic fatigue syndrome or depression, he never provided Plaintiff with treatment nor referred him to a specialist for such conditions. As a result of Defendant's deliberate indifference, between July 22, 2009 and April 2010, Plaintiff suffered unnecessary pain and has permanent thinning of his joint lining.

### 2. Analysis

The parties do not dispute that Plaintiff suffered a serious medical condition – muscle and joint pain diagnosed as PMR. Therefore, the Court need only determine whether there is a genuine issue of material fact as to whether Defendant Kim was deliberately indifferent to Plaintiff's medical needs. The issue in this regard is whether Defendant Kim denied, delayed, or interfered with Plaintiff's medical treatment or whether he was simply negligent in diagnosing and treating Plaintiff for his pain. *See Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1987).

Defendant contends that he treated Plaintiff for the condition that he knew required treatment, *i.e.* his skin lesion, and that he did not even suspect Plaintiff had PMR. However, the issue is not whether Defendant ultimately properly diagnosed Plaintiff with PMR or whether he properly treated Plaintiff for other medical conditions, but whether Defendant failed to treat Plaintiff for his complaints of muscle and joint pain. "A finding that the defendant repeatedly failed to treat an inmate properly or that a single failure was egregious strongly suggests that the defendant's actions were motivated by

6

'deliberate indifference' to the prisoner's medical needs." *McGuckin*, 974 F.2d at 1062.

Defendant admits that at his initial appointment with Plaintiff he told him that he may "have to learn to live with the pain," and that at a follow-up appointment he did not address Plaintiff's complaints of pain.  Defendant submits a declaration from Dr. Barnett who opines that Defendant's advice to "live with the pain" was "reasonable," given Plaintiff was jogging daily.  (ECF No. 71-3 at 6.)  However, as Plaintiff points out, his medical records do not support Dr. Barnett's declaration that he was able to jog daily at the time.  Around that time, Plaintiff complained of the exact opposite – he had difficulty being able to walk and was no longer able to jog.

Defendant noted possible diagnoses of chronic fatigue syndrome, depression, hypochondriasis, or antisocial personality disorder for Plaintiff's pain.  But it is not clear from the record what, if any, treatment was available or recommended for such conditions or whether Defendant refused to provide treatment that was available.

Defendant contends that Plaintiff was already on Naproxen, which is commonly used for pain relief, and that a failure to provide other pain medication reflects a difference of opinion as to treatment, not deliberate indifference.  Yet, here again, there is contradiction in therecord:  Plaintiff's medical records indicate that he is allergic to Naproxen.  (ECF No. 71-3 at 19, 22, 26.)

The above-noted conflicts and ambiguities in the record leave the case unsuitable for summary judgment.  It is recommended that the parties' cross-motions for summary judgment be DENIED.

**D.    Qualified Immunity**

Defendant Kim argues that he is entitled to qualified immunity because there is no evidence demonstrating that he was deliberately indifferent or interfered with, denied, or delayed Plaintiff's medical treatment.

Plaintiff argues that Defendant is not immune from liability because he acted with deliberate indifference.

7

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009) ("*Saucier* procedure should not be regarded as an inflexible requirement"). The other inquiry is "whether the right was clearly established." *Id*. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citation omitted). In resolving these issues, the Court must view the evidence in the light most favorable to Plaintiff and resolve all material factual disputes in favor of Plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As noted above, the conflicting evidence in this case leaves the Court unable to determine whether Defendant Kim acted with deliberate indifference to Plaintiff's serious medical need. The Court cannot determine if Defendant's acts or failures to act were protected by the doctrine of qualified immunity without having first determined what those acts and inactions were and whether they violated Plaintiff's Constitutional rights. *See Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (factual disputes on excessive force and medical indifference claims made a finding of qualified immunity inappropriate at the summary judgment stage). It is recommended that Defendant's motion for summary judgment in this regard be DENIED.

### III. MOTION FOR CORRECTION OF TYPOGRAPHICAL ERROR

Plaintiff moves to correct a typographical error in his opposition to Defendant's motion for summary judgment. (ECF No. 77.) On page 7, lines 14-16, Plaintiff wishes to replace the word "a" with "no" in the sentence "Thus there is a genuine issue for a final judgment and/or trial." (ECF No. 75.) There is no objection from Defendant. It is recommended that Plaintiff's motion be GRANTED.

### IV. CONCLUSION AND RECOMMENDATION

The Court finds that there are genuine issues of material fact as to Defendant's liability. Based on the foregoing, the Court HEREBY RECOMMENDS that the parties' cross-motions for summary judgment be DENIED (ECF Nos. 51 & 71.) and Plaintiff's motion for correction be GRANTED (ECF No. 77.).

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: September 14, 2015     /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE

9